# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3395

_____

United States of America,

     Appellee,

    v.

Justin J. Allee,

     Appellant.

_____

No. 01-3535

_____

United States of America,

     Appellant,

    v.

Justin J. Allee,

     Appellee.

*
*
*
*
*
*
*
*
*

Appeals from the United States
District Court for the
District of Nebraska.

_____

Submitted: June 11, 2002

Filed: August 22, 2002

_____

Before WOLLMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Justin J. Allee appeals his convictions for conspiracy, bank robbery, carjacking, and weapons violations. The government cross appeals the district court's decision to run Allee's sentence for a second violation of 18 U.S.C. § 924(c)(1) concurrently with his sentence for his first violation of that section. We affirm Allee's convictions but reverse his sentence and remand to the district court for resentencing.

**I.**

On March 14, 2000, Allee, his brother James Allee, and Sue Bryant robbed the West Gate Bank in Lincoln, Nebraska. While the Allees were carrying out the robbery, Sue Bryant waited with the switch car in an apartment complex a short distance from the bank. After fleeing the bank in the white Jeep Cherokee that they, along with Bryant, had earlier stolen, the Allees drove to the apartment complex where they joined Bryant in the switch car, a blue Mazda Navajo that belonged to the Allees' sister. Police observed and followed the Mazda on Interstate 80. When the officers pulled the Mazda over and approached the vehicle, Bryant sped off, left the highway, and drove across a field.

Shortly thereafter, the Allees entered a home in Greenwood, Nebraska, and demanded the keys to a pickup truck that was parked in the driveway. After taking the keys, James Allee shot the residents, Leslie and Retha Debrie. Bryant and the Allees fled the scene in the Debries' pickup truck. They subsequently abandoned and burned the truck in Iowa.

On March 16, 2000, all three defendants were arrested, Bryant in the morning, James Allee in the afternoon, and Allee in the evening. Police read Allee his Miranda

rights and placed him in a Chevrolet Suburban for transport to the Omaha police station.  After being placed in an interview room, Allee consented to answer questions from the police.  In a short interview, he asserted that he was not involved in the robbery or the shooting.  He stated that he hoped the Debries would recover, but denied having shot them.[1]

During his pretrial incarceration in the Douglas County, Nebraska, Correctional Facility, Allee made a number of phone calls to various people wherein he made statements that the prosecution argued were attempts to create an alibi, instructions to individuals to keep silent, and attempts to implicate others in the crimes.

Both Bryant and James Allee pleaded guilty.  James Allee entered his guilty plea on March 6, 2001.  On March 12, 2001, James Allee escaped from jail, but was recaptured some four hours later.  There was substantial news coverage of the crimes, the search for the perpetrators, the arrests, James Allee's escape and recapture, the DeBries' recovery from the extensive injuries they had suffered in the shooting, and the related court proceedings.  Additionally, on March 6 and 7, 2001, the *Omaha World-Herald* reported that the Assistant United States Attorney announced that initially both Allees accepted plea agreements, but that Justin Allee had withdrawn from the plea deal.

Allee was convicted of conspiracy to commit bank robbery in violation of 18 U.S.C. § 2113(a) and (d); bank robbery in violation of 18 U.S.C. §§ 2113(a), (d), and 2; car jacking in violation of 18 U.S.C. §§ 2119(2) and 2; displaying and brandishing a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; using and discharging a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), (C)(ii), and 2; and being a felon in possession of a

---

[1]Allee has not appealed the ruling denying his motion to suppress these statements.

firearm in violation of 18 U.S.C. § 922(g)(1). Allee was sentenced to concurrent 235 month sentences on each count except the two § 924(c)(1) offenses. He was sentenced to 84 months' imprisonment on the first § 924(c)(1) charge and 300 months' imprisonment on the second. At sentencing, the district court found that § 924(c)(1)(D)(ii) required that it impose the § 924 sentences consecutively to the sentences for the underlying offenses but that it had the discretion to run the § 924 sentences concurrently with each other. Hence, Allee was sentenced to a total of 535 months' imprisonment.

## II.

Allee appeals his conviction on three grounds. First, he asserts that the district court wrongfully denied his motion for a change of venue based on excessive pretrial publicity. Second, he contends that the court impermissibly allowed testimony about his post-Miranda silence. Last, he argues that the court erred in admitting tapes of telephone calls made while he was awaiting trial because their prejudice outweighed their probative value and because they were inadmissible character evidence. The government cross appeals Allee's sentence, asserting that the district court had no discretion to run the sentences for the § 924 violations concurrently with each other.

## A.

We review a denial of a motion for a change of venue for abuse of discretion. United States v. Blom, 242 F.3d 799, 803 (8th Cir. 2001). We employ a two-tiered analysis when the motion is based on pretrial publicity. Id. The tier-one analysis involves a determination of whether the pretrial publicity was so extensive and corrupting that unfairness of constitutional magnitude must be presumed. Id. If no such determination is made, we move to the second tier of the analysis, which is a determination "whether the jury-selection process established an inference of actual prejudice." Id. at 804. In making this determination, "[w]e must 'independently

evaluate the voir dire testimony of the impaneled jury in order to determine whether an impartial jury was selected, thus obviating the necessity for a change of venue.'" Id. (quoting United States v. McNally, 485 F.2d 398, 403 (8th Cir. 1973)).  Thus, under either tier of the analysis, we will reverse only if a change of venue would have been necessary to protect the defendant's right to a fair trial.

Allee contends that his is a tier-one case.  He points to over two hundred local news items that pertained to the crimes, the search for and arrests of the perpetrators, the recovery of the victims, the guilty pleas of James Allee and Sue Bryant, James Allee's escape from jail, and the announcement of Allee's withdrawn guilty plea.

The mere existence of press coverage, however, is not sufficient to create a presumption of inherent prejudice and thus warrant a change of venue.  To create a presumption, the coverage must be inflammatory or accusatory.  See Id.  Allee documents incidents in which less-than-objective language was used in the news media.  Some examples include statements that the perpetrators "should pay forever," engaged in a "series of 'Bonnie and Clyde' getaways," were "very dangerous individuals who do not have regard for life," and were "linked to [a] long list of crimes."  Isolated incidents of intemperate commentary about the crimes and perpetrators, however, do not rise to the level of inflammatory or accusatory where for the most part, the reporting appears to have been objective and unemotional.  See McNally, 485 F.2d at 401 (finding no inherent prejudice in press coverage despite "understandable emotionalism concerning hijacking" in community).

Although the press coverage of the events in question was extensive, the time frames in which the bulk of the coverage occurred were limited to the period of the crimes and arrests and the period that encompassed James Allee's guilty plea and jailbreak.  The first events occurred in March 2000, more than one year before trial, and the second incidents occurred in March 2001, approximately two months before trial.  Moreover, because Allee's trial originally was scheduled for the end of March

2001, the district court granted Allee's request for a continuance in order to guard against any prejudice that might have arisen from the coverage of James Allee's guilty plea, escape, and recapture. Thus, the year-long time span between the press accounts of the robbery, shooting, and capture, and the two-month time span between the accounts regarding James Allee's plea, escape, and recapture worked to eliminate the risk of presumed prejudice.

Allee's claim also fails under tier-two analysis. Allee directs our attention to four venire members who were dismissed from the panel because they asserted that they could not set aside what they had heard in the press and decide the case only on the evidence presented in court. In determining whether Allee's jury was fair and impartial, we must focus on the jury that was actually seated. Blom, 242 F.3d at 804-05; McNally, 485 F.2d at 403. "The existence of prejudice among prospective jurors does not necessarily mean that an impartial jury cannot be impaneled." United States v. Mercer, 853 F.2d 630, 633 (8th Cir. 1988). Each of the potential jurors Allee identifies was replaced with a venire member who either had no recollection of the events or affirmatively asserted the ability to decide the case impartially and only on the evidence presented. Additionally, five venire members who had stated that they had some recollection of the events ultimately were struck from the panel. Our independent review of the voir dire record satisfies us that the district court's careful exercise of its discretion in the manner in which it conducted the voir dire resulted in the seating of a fair and impartial jury. See Blom, 242 F.3d at 804. Accordingly, we find no abuse of discretion in the district court's denial of the motion for change of venue.

**B.**

Allee also argues that the district court erred in permitting the government to inquire into his post-Miranda silence in violation of Doyle v. Ohio, 426 U.S. 610 (1976). "Doyle rests on the fundamental unfairness of implicitly assuring a suspect

-6-

that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." Greer v. Miller, 483 U.S. 756, 763 (1987) (citations and internal quotes omitted). Accordingly, a Doyle violation constitutes trial error, Brecht v. Abrahamson, 507 U.S. 619, 629 (1993), and we must analyze the questioning as it developed at trial to determine whether a violation occurred. See Greer, 483 U.S. at 764 n.5 (holding that "sequence of events at trial" indicated that defendant's post-arrest silence was not used against him in violation of Doyle); Anderson v. Charles, 447 U.S. 404, 409 (1980).

Allee points to the following inquiry by the prosecutor:

Q. You were brought down to the police station and you were brought to an interview room, weren't you?
A. Yes, I was.
Q. You were given your Miranda rights at that time? In other words, they advised you of what the charges are and they tell you about your rights, your right to remain silent and everything else, correct?
Mr. Courtney: Your Honor, I'll object to this and renew the motion filed, pretrial motion that was filed, with respect to any statements as these are the subject matter statements that – I mean pretrial motions that were filed earlier.
The Court: Overruled.
The Witness: Took place in the Suburban.
Q. You were read your rights in the Suburban?
A. The whole interview took place in the Suburban.
Q. No matter where it took place, whether at the police station, or whether it took place en route in the Suburban, you were given an opportunity, were you not, to tell them who you were with and what you had been doing that day, and you didn't [do] so, did you?
A. They didn't ask me –
* * *
A. They didn't ask me who I was with.

Q. They didn't have to ask you; you could have told them, right?
A. I just told them what I was asked –
* * *
Q. You didn't tell them, did you?
A. No.
Q. You didn't tell them anything about what you have just told this jury?
A. No.
Q. You didn't tell them anything about an alibi at that time, did you?
Mr. Pfeffer: Objection, Your Honor. This is irrelevant and he has a constitutional right not to say anything outside the presence of an attorney.
The Court: Overruled.
* * *
Q. You didn't tell the officers during the time period, the relevant time period in which they were asking you, either in the Suburban or at central police station after you were given your rights anything about an alibi, did you?
* * *
A. Had nothing to say without an attorney present.

The Supreme Court has held that <u>Doyle</u> is not implicated where "questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." <u>Anderson</u>, 447 U.S. at 409. It is clear from this record that Allee and the prosecutor were discussing the statements made to police by Allee after he had waived his <u>Miranda</u> rights. In fact, defense counsel's first objection was a renewal of Allee's pretrial suppression motion. Moreover, the prosecutor and Allee discussed the "interview," the fact that the police "didn't ask" him questions about alibi, and that Allee "just told them what [he] was asked." The jury heard testimony about a verbal exchange, not silence.

At oral argument, Allee attempted to distinguish between the interview that he now concedes took place in an interview room at the Omaha police station and what he alleges was the prosecution's at-trial commentary on his silence in the Suburban.

-8-

As we stated, our focus must be on what occurred during trial. The fact that Allee asserted at trial that the events occurred in the Suburban rather than in the interview room does not lead to a conclusion that there was a period of silence upon which the government impermissibly commented. The government's questioning was not designed to elicit testimony about silence, nor was that the result. Thus, there was no Doyle violation.

## C.

Allee also contends that the district court erred in permitting the introduction of portions of telephone calls made by Allee from jail while he was awaiting trial. He objects on the grounds that the tapes were unfairly prejudicial under Rule 403 and that they were impermissible character evidence under Rule 404. We review decisions regarding the admissibility of evidence under an abuse of discretion standard. United States v. Fuller, 887 F.2d 144, 147 (8th Cir. 1989) (citing United States v. Marshall, 683 F.2d 1212, 1215 (8th Cir. 1982)). "In balancing the prejudicial effect and probative value, great deference is given to the district judge's determination . . . ." United States v. DeLuna, 763 F.2d 897, 913 (8th Cir. 1985) (citing United States v. Wagoner, 713 F.2d 1371, 1375 (8th Cir. 1983)).

Allee advanced an alibi defense at trial. From each of the tape excerpts, the jury could have inferred that Allee's statements were attempts to create an alibi, to implicate others in the crimes, or to persuade witnesses to remain quiet about his role in the crimes. Thus, the excerpts were not only relevant but were particularly probative on the issue of the veracity of his alibi defense. Accordingly, the district court did not abuse its discretion by admitting the tapes over Allee's Rule 403 objection.

Allee also contends that the district court erred in admitting the taped conversations because they were inadmissible character evidence. Rule 404(a)

prohibits the introduction of a person's character "for the purpose of proving action in conformity therewith on a particular occasion." Allee argues that because the telephone calls were placed from jail, they would tend to indicate to the jury that he has a criminal character and that he acted in conformity with that criminal character in regard to the crimes with which he was charged.

There is no indication in the record that the tapes were introduced for the purpose of establishing criminal character. Rather, they were introduced as evidence from which the jury could evaluate the truthfulness of Allee's alibi. Accordingly, the district court did not abuse its discretion by admitting the tapes over Allee's Rule 404 objection.

**D.**

The government contends that the district court erred in concluding that it had the discretion to run Allee's two sentences under 18 U.S.C. § 924(c)(1) concurrently with each other. We agree. The language of the statute and the cases explaining its application clearly indicate that the sentences must run consecutively.

Section 924(c)(1) sets out the penalties for a violator who "during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." For a first conviction under the subsection, minimum terms are imposed. 18 U.S.C. § 924(c)(1)(A)(i)-(iii). "In the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years." 18 U.S.C. § 924(c)(1)(C)(i). The statute further provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . ." 18 U.S.C. § 924(c)(1)(D)(ii).

Allee was convicted of two violations of § 924(c)(1)(A). For the first violation, brandishing a firearm during the bank robbery, he was sentenced to the mandatory minimum sentence of seven years, or 84 months, under § 924(c)(1)(A)(ii). Because the second violation, discharge of a firearm during the carjacking, was a second conviction, Allee was sentenced to 300 months' imprisonment under the § 924(c)(1)(C)(i) enhancement.

Allee argues that because the underlying offenses were part of a single criminal transaction, the district court was not constrained by the mandatory language of § 924(c)(1)(D)(ii) to run the sentences consecutively. Allee analogizes his situation to that of the defendant in United States v. Freisinger, 937 F.2d 383 (8th Cir. 1991). In Freisinger, we concluded that "where multiple section 924(c)(1) convictions are based upon the carrying (or use) of more than one firearm during a single underlying offense, the sentencing court should impose" sentences to run concurrently. Id. at 392. Freisinger was convicted of four § 924(c)(1) violations, one each for carrying three handguns and one rifle during his commission of the single underlying offense of possession with intent to distribute cocaine. Allee's case is substantially different, however, and thus Freisinger is inapposite. Allee was convicted of two distinct underlying offenses, bank robbery and carjacking, during each of which he employed a firearm. Although for some purposes the incidents might be viewed as a single criminal transaction (for joinder purposes under Rule 8(a) for instance), they do not constitute a single underlying offense.

Allee's situation is more similar to that of the defendant in United States v. Davis, 103 F.3d 660 (8th Cir. 1996). Davis committed three bank robberies; two of them within five minutes of each other. He was convicted of three § 924(c)(1) offenses. For the first violation he was sentenced to 60 months' imprisonment. For each of the two subsequent convictions, he was sentenced under the enhancement to

terms of 240 months' imprisonment.[2]   The district court ran the sentences consecutively, and in affirming we stated:  "The express language of the statute prohibits the district court from allowing the firearms terms of imprisonment to run concurrently with each other." Id. at 677.  Although Allee seeks to distinguish Davis on the ground that Davis committed three separate acts, we are not persuaded for Allee also committed separate acts – bank robbery and carjacking.

Accordingly, we affirm Allee's conviction, vacate his sentence, and remand to the district court for resentencing consistent with the views set forth in this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]The enhancement has since been raised to its present level of 300 months.