# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2276

_____

United States of America

*Plaintiff - Appellee*

v.

Dustin L. Worthey

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 18, 2013
Filed: June 17, 2013

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury convicted Dustin Worthey of one count of receiving child pornography and one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (a)(4)(B). The district court[1] sentenced Worthey to 180 months' imprisonment.

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

Worthey appeals, arguing that the district court erred in denying his motion for a change of venue, in denying his motions for judgment of acquittal and for a new trial, and in admitting evidence of child pornography over his offer to stipulate thereto. He also challenges his sentence. We affirm.

## I. Background

We state the facts against Worthey "in the light most favorable to the jury's verdict." United States v. Tremusini, 688 F.3d 547, 550 n.2 (8th Cir. 2012) (quoting United States v. Fuller, 557 F.3d 859, 862 (8th Cir. 2009)).

On August 26, 2010, Arkansas State Police (ASP) Agent Doug Estes conducted an undercover investigation of an Internet Protocol (IP) address that he suspected of trading child pornography over FrostWire, an online peer-to-peer file-sharing program. Estes performed an undercover "browse" of the suspect IP address, which revealed files containing known images of child pornography being offered for download. Estes viewed two of the images, confirmed that they were child pornography, and transferred the case to ASP Agent Charles Roe, who was geographically closer to the suspect IP address.

Roe contacted the Internet service provider of the suspect IP address and learned that the suspect IP address was registered to Chandra Worthey at a residence on the 200 block of Braden Street in Monette, Arkansas, and that the email address "dman762000@gmail.com" was listed for the account. Roe then conducted surveillance of the residence, confirmed for himself that the suspect images were indeed child pornography, and obtained a search warrant.

On the morning of November 4, 2010, Roe, along with ASP Agent Ramey Lovan and Homeland Security Investigations Agent Deryl Rowe, drove to the Worthey residence to execute the search warrant. Upon their arrival, the agents

discovered no one there. As the agents were ascertaining Worthey's place of employment, they were told by ASP Agent Mike Grimes that Worthey and his then-wife, Chandra (collectively the Wortheys), were with him at ASP Headquarters. Roe told Grimes to direct the Wortheys to return to their residence. Roe, Lovan, and Rowe then proceeded to the Worthey residence. Upon being so instructed by Grimes, Worthey said to Chandra, "Well, you are probably going to want to divorce me when this is all over." Grimes and the Wortheys then left separately for the Worthey residence.

Upon arriving at the residence, Worthey approached Rowe and said, "I know why you are here. The search warrant is for child pornography." Worthey then became extremely distraught, explaining his emotional state to Rowe by saying, "Because I downloaded child pornography."

Inside the residence, Roe found a Toshiba laptop computer, a preview of which revealed child pornography. Roe seized, among other things, the laptop, five other computers, and a wireless router from the Worthey residence. Roe took the laptop to the Hi-Tech Crime Unit Computer Lab at the Paragould Police Department for Jonesboro Police Department Agent Ernest Ward to analyze and kept the five other computers to analyze himself. Roe's week-long examination of the five other computers revealed no child pornography on them.

Ward's forensic examination of the laptop's hard drive disclosed a user account called "dman," and Ward learned that the password "Badone76" was required to access the user account; that the username and password were created on February 27, 2010; and that the email address associated with the laptop was "Dman76 something@gmail." Ward also discovered a username for Arkansas State University online that contained the name "Dustin Worthey."

Ward found three file-sharing programs under the "dman" user account: FrostWire, LuckyWire, and uTorrent, although FrostWire was predominantly used.

Regarding the FrostWire account, Ward determined that the GUID[2] number within the FrostWire properties file matched the GUID number associated with Estes's undercover investigation. Ward found files containing child pornography in both the "dman" FrostWire "incomplete" and "saved" folders.

Worthey was charged with receiving and possessing child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (a)(4)(B). Before trial, Worthey moved for a change of venue, asking that his trial be held in Jonesboro, within the Jonesboro Division of the Eastern District of Arkansas, instead of Little Rock, within the Western Division of the Eastern District of Arkansas. The district court concluded that concerns over security and the jury's observation of Worthey in custody outweighed any inconvenience placed upon the witnesses and Worthey's family and friends and thus denied the motion.

The government disclosed prior to trial that it intended to play up to five seconds of each of four videos containing child pornography found in the "dman" FrostWire "incomplete" folder, as well as up to five seconds of each of five videos containing child pornography found in the "dman" FrostWire "saved" folder.[3] The video clips were a "representative sample of all of the child pornography" and did not include "the worst" of the videos. Worthey sought to stipulate that the videos contained child pornography and thereby preclude their introduction at trial. The district court, though not having viewed the video clips, determined that although the

_____

[2]At trial, Estes explained that a GUID is a number assigned to an individual computer by a file-sharing program that serves as "the identifier for that one particular machine on the network[.]"

[3]The record is unclear whether the government sought to and ultimately played three or five seconds of each of the four videos or some combination thereof. The testimony at trial, however, indicates that the government played five seconds from at least one of the videos and up to five seconds from the other three videos.

video clips were likely offensive, the government retained the right to present its evidence. At trial, the government published the video clips to the jury.

Worthey moved for judgment of acquittal at the close of the government's case and again at the close of all of the evidence. The district court denied the motions. Following the jury's verdict, the district court denied Worthey's motion for judgment of acquittal and alternatively for a new trial.

Following Worthey's conviction, a presentence report (PSR) was prepared. Among other things, the PSR detailed an investigation by the Monette Police Department that began after Chandra Worthey reported, shortly after the search warrant was executed, that her daughter and son—Worthey's stepdaughter and stepson—had told her that Worthey had been molesting them. During the ensuing investigation, Worthey's stepdaughter and stepson reported, in detail, that Worthey had sexually abused them.

The PSR recommended a base offense level of 22 and an adjusted offense level of 38, which included a five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, see U.S.S.G. § 2G2.2(b)(5), as well as a four-level enhancement for possessing child pornography portraying sadistic or masochistic conduct or other depictions of violence, see id. § 2G2.2(b)(4). From this and a criminal history category of I, the PSR calculated a United States Sentencing Guidelines (Guidelines) range of 235-293 months' imprisonment, which was reduced to 235-240 months' imprisonment based on the maximum term of imprisonment authorized by statute.

At sentencing, Ward testified he had found on the laptop approximately 200 videos of child pornography totaling between 65 and 75 hours in length, as well as 204 images of child pornography. Later, Rowe testified as to the graphic and violent content of three of the videos containing child pornography found on the laptop.

Also at sentencing, the district court received a report from Morrison County Social Services, dated March 16, 2012, concerning Worthey's stepdaughter. In the report, Worthey's stepdaughter stated that Worthey "began sexually abusing her prior to her third birthday up until November of 2010, at age 13, when he was arrested for child pornography at that time." The report also detailed Worthey's stepdaughter's continuing post-abuse struggles, which included suicidal ideation. The district court also received a report from the Craighead County Sheriff's Department, dated July 3, 2011, of an attempted suicide by Worthey's stepson. The district court then heard testimony from Ward regarding the details of a conversation between Ward and Chandra earlier that day, during which Chandra told him that Worthey's stepdaughter was living at "a girls' home and a juvenile mental institution, under 24-hour lockdown," and that Worthey's stepson "was being treated for anxiety disorder due to sexual abuse." The district court then admitted, over Worthey's objection, videotape statements by Worthey's stepdaughter and stepson.

The district court found by a preponderance of the evidence that Worthey had engaged in a pattern of sexual abuse of his minor stepchildren. The district court then determined that Worthey had a base offense level of 22; that the five-level pattern-of-sexual-abuse enhancement, the four-level depiction-of-violence enhancement, and several other enhancements, applied; that Worthey had a total offense level of 38; and that Worthey had a criminal history category of I. From this, the district court calculated a Guidelines range of 235-293 months' imprisonment, which became 235-240 months' imprisonment based on the applicable statutory maximum. The district court credited Worthey with "some reservations" it had regarding the imposition of the five-level pattern-of-sexual-abuse enhancement and sentenced him to 180 months' imprisonment on the receipt count and to 120 months' imprisonment on the possession count, with the sentences to run concurrently.

## II. Discussion

### A. Motion for a Change of Venue

Worthey argues that the district court erred in denying his motion for a change of venue. "We review a denial of a motion for a change of venue for abuse of discretion." United States v. Stanko, 528 F.3d 581, 584 (8th Cir. 2008) (quoting United States v. Allee, 299 F.3d 996, 999 (8th Cir. 2002)).

The Sixth Amendment to the United States Constitution "requires that a trial be held in the state and district where the crime was committed." Id. (quoting United States v. Wipf, 397 F.3d 677, 686 (8th Cir. 2005)). "However, a defendant does not have a right to be tried in a particular division." Id. (quoting Wipf, 397 F.3d at 686). Pursuant to Federal Rule of Criminal Procedure 18, the district court "must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." "A district judge has broad discretion in determining where within a district a trial will be held, and to overturn the court's decision the defendant must prove abuse of that discretion or prejudice." Stanko, 528 F.3d at 584 (quoting United States v. Davis, 785 F.2d 610, 616 (8th Cir. 1986)).

Worthey argues that the district court failed to afford sufficient weight to the convenience of the witnesses, his family, and his friends. He argues that the witnesses, his family, and his friends were forced to commute in excess of two hours to attend his trial and that the government's purported security concerns could have been adequately addressed by additional security officers.

Worthey points to our decision in Stanko, in which we explained that "[w]hile the district court retains considerable discretion in determining the place of trial, that discretion is contingent upon the court's consideration of the factors provided in Rule

18 when ruling on a proper motion for change of venue." 528 F.3d at 586. But unlike Stanko, where there was "no evidence in the record that the district court undertook any consideration of the convenience of the defendant or witnesses or the prompt administration of justice[,]" id. at 585, here the record shows that the district court considered the Rule 18 factors and determined that security concerns from holding the trial in Jonesboro outweighed the inconvenience of holding the trial in Little Rock. We conclude that the district court did not abuse its discretion in so ruling. Moreover, Worthey has shown no prejudice arising therefrom. See United States v. Anderson, 626 F.2d 1358, 1375 (8th Cir. 1980) ("Absent any prejudice to the defense, the decision of the trial court cannot be considered an abuse of discretion."), *cited in* Stanko, 528 F.3d at 584.

## B. Sufficiency of the Evidence

Worthey argues that the district court erred in denying his motions for judgment of acquittal and motion for a new trial because the evidence was insufficient to convict him. He argues that the government failed to prove (1) that he was the person who accessed the Internet and downloaded the child pornography found on the laptop; and (2) that the child pornography was saved in the laptop's permanent memory as opposed to temporary cache.

We review *de novo* the district court's denial of the motion for judgment of acquittal, but "review a challenge to the sufficiency of the evidence deferentially and affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Vega, 676 F.3d 708, 721 (8th Cir. 2012) (quoting United States v. Augustine, 663 F.3d 367, 373 (8th Cir. 2011)). We review the district court's denial of the motion for a new trial for an abuse of discretion. United States v. Maybee, 687 F.3d 1026, 1032 (8th Cir. 2012). "Although the district court may weigh the evidence and disbelieve witnesses, the verdict must be allowed to stand '[u]nless the district court ultimately determines that a

miscarriage of justice will occur.'" Id. (alteration in original) (quoting United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002)).

As already noted, Worthey was convicted of receiving and possessing child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (a)(4)(B). "The convictions for receipt and possession of child pornography turn on essentially the same requirements and evidence, and thus will be discussed together." United States v. White, 506 F.3d 635, 641 (8th Cir. 2007). "The elements of receipt under 18 U.S.C. § 2252(a)(2) require the defendant to knowingly receive an item of child pornography, and the item to be transported in interstate or foreign commerce." Id. "The elements of possession under 18 U.S.C. § 2252(a)(4)(B) require the defendant to knowingly possess an item of child pornography, and the item to be transported in interstate or foreign commerce by any means." Id. We construe Worthey's challenges as disputing whether he was the one who downloaded the child pornography and if so, whether he "received" or "possessed" the child pornography.

As recounted earlier, a forensic examination of the laptop revealed a user account called "dman" with the password "Badone76," several file-sharing programs under the "dman" user account, an email address associated with the laptop of "Dman76 something @gmail," and a username for Arkansas State University online that contained the name "Dustin Worthey." In addition to the evidence obtained from the laptop, the government also introduced Worthey's inculpatory statements. We conclude that the evidence found on the laptop, considered together with Worthey's statements, was sufficient to establish that Worthey was the person who downloaded the child pornography found on the laptop in his residence.

We also agree with the district court that the evidence was sufficient to establish that the files containing child pornography were knowingly downloaded and saved in the laptop's permanent memory. Unlike United States v. Stulock, 308 F.3d 922, 925 (8th Cir. 2002), in which we noted that the district court had acquitted the

defendant on the charge of knowingly possessing child pornography because "[t]he possession charge specified only the images found in the browser cache[,]" the evidence adduced at Worthey's trial established that the child pornography found on the laptop was downloaded through peer-to-peer file-sharing programs onto the laptop. Agent Ward explained that he found child pornography in files within the FrostWire "incomplete" and "saved" folders on the laptop and that the files containing the child pornography were searched for and downloaded by the user. This testimony was consistent with Agent Estes's testimony regarding the operation of file-sharing programs such as FrostWire. See United States v. Koch, 625 F.3d 470, 478-79 (8th Cir. 2010) (holding that images "found on [the defendant's] computer and flash drive in files that a user had to create manually[,]" along with "evidence that a number of the images had been moved and others deleted[,]" were "sufficient to support the finding that [the defendant] knowingly possessed the images of child pornography" (footnote omitted)). Accordingly, the district court did not err in denying Worthey's motions for judgment of acquittal and motion for a new trial.

## C. Stipulation

Worthey argues that the district court erred in permitting the government to play the video clips containing child pornography at trial despite his willingness to stipulate that they contained child pornography. He argues (1) that in light of this stipulation, the video clips should have been excluded under Old Chief v. United States, 519 U.S. 172 (1997); (2) that the district court failed to conduct a Federal Rule of Evidence 403 balancing test in deciding whether to admit the video clips or to accept his stipulation as a substitute therefor; and (3) that the district court otherwise erred in admitting the video clips. We review the district court's evidentiary ruling for an abuse of discretion. United States v. Sewell, 457 F.3d 841, 843 (8th Cir. 2006).

We conclude first that Worthey's Old Chief argument is foreclosed by United States v. McCourt, 468 F.3d 1088, 1091-92 (8th Cir. 2006), in which we held that Old Chief did not prohibit publication of child pornography video clips to the jury over the defendant's offer to stipulate to their content. See also Sewell, 457 F.3d at 844 (explaining that "the government is entitled to prove its case by evidence of its own choice and is not required to accept the offer [to stipulate]"); United States v. Becht, 267 F.3d 767, 774 (8th Cir. 2001) (similar). To the extent that Worthey's argument constitutes a challenge to the validity or rationale of McCourt and our other precedent, we necessarily must reject it, for "[i]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." United States v. Betcher, 534 F.3d 820, 823-24 (8th Cir. 2008) (quoting Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002)).

The record indicates that the district court conducted a Rule 403 analysis when considering the admissibility of the video clips. Before trial, Worthey's counsel argued that the video clips should be excluded in accordance with his stipulation because they would "bias and prejudice and inflame [the] jury against [Worthey]." The government responded that it intended to play only select five-second video clips and that it had chosen clips as "a representative sample of all of the child pornography" without including "the worst" of the videos. Given the parties' stated positions, "[w]e presume that the district court weighed this evidence pursuant to Rule 403" and concluded that the government should be permitted to play the video clips. Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 885 (8th Cir. 2006), *cited in* McCourt, 468 F.3d at 1092.

Moreover, we do not agree with Worthey that the video clips unfairly prejudiced him. Our court considered and rejected a similar argument in McCourt:

> The only argument that McCourt offers in support of his unfair prejudice claim is that videos of child pornography, more so than still

-11-

images, arouse emotions that a jury is unable to set aside in reaching its verdict. While the videos were no doubt unfavorable to McCourt, "the fact remains that [Rule 403] does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is *unfairly* prejudicial." United States v. Johnson, 463 F.3d 803, 809 (8th Cir. 2006) (internal quotation omitted) (emphasis added). McCourt may be correct that videos are qualitatively different from still images, but it is also true that a video is nothing more than a series of still images shown in rapid succession to create the illusion of motion. Only seven videos out of the more than 175 found on McCourt's computer were shown to the jury and each for only three seconds. Because any illusion of motion created by a mere three seconds of video is surely minimal, we see little qualitative difference between the limited publication of these seven videos and the publication of still images for longer durations, as upheld in our prior cases. See Sewell, 457 F.3d at 844 (reversing exclusion of more than 60 seconds of still images); Becht, 267 F.3d at 774 (upholding 39 images displayed and hard copies distributed to jurors). Moreover, unlike in Becht and Sewell, which dealt with the defendant's collection of still images, we see no reason here that the Government must limit its evidence to still images because McCourt did not so limit his collection.

Given the limited number of videos and their minimal duration, we do not find that their publication to the jury constitutes unfair prejudice.

McCourt, 468 F.3d at 1092-93. Here, the government published only select five-second video clips to the jury as a representative sample of the less-than-worst videos. Although it might have been a better course for the district court to have examined the video clips for itself prior to determining their admissibility, see United States v. Cunningham, 694 F.3d 372, 386-87 (3d Cir. 2012), under the circumstances of this case we find no unfair prejudice in the publication of the video clips to the jury. Accordingly, we need not consider or weigh the probative value of the video clips or

the potential adequacy of Worthey's stipulation as a substitution therefor. E.g., McCourt, 468 F.3d at 1093; Betcher, 534 F.3d at 825.

## D. Sentence

Worthey argues that imposition of the five-level enhancement for engaging in a pattern of sexual abuse of a minor violated his due process rights (1) because the enhancement was not supported by clear and convincing evidence notwithstanding the fact that the enhancement increased his potential sentence by up to 100 additional months' imprisonment, and (2) because the enhancement was based largely on the videotape statements of his minor stepchildren.[4] He also argues that his 180-month sentence is unreasonable (1) because he presented evidence that he suffers from Asperger's Syndrome, and (2) because his sentence is greater than those of other offenders convicted of similar yet more heinous conduct. We review *de novo* Worthey's due process argument, see United States v. Lee, 625 F.3d 1030, 1034 (8th Cir. 2010), and review the substantive reasonableness of the sentence for an abuse of discretion, see United States v. Spencer, 700 F.3d 317, 322 (8th Cir. 2012).

"We have rejected the assertion that 'due process require[s] the government to prove by clear and convincing evidence facts that produce[] so substantial an increase in [a defendant's] [G]uidelines range.'" United States v. Waller, 689 F.3d 947, 958 (8th Cir. 2012) (alterations in original) (quoting United States v. Villareal-Amarillas, 562 F.3d 892, 895 (8th Cir. 2009)); see also Lee, 625 F.3d at 1034-35 (explaining that "we [have] decided squarely that due process never requires applying more than a preponderance-of-the-evidence standard for finding sentencing facts, even where the fact-finding has an extremely disproportionate impact on the defendant's advisory

---

[4]Worthey originally also challenged the imposition of the five-level enhancement on the basis that he was facing charges in state court for the same underlying conduct. In his reply brief, however, Worthey states that the state court charges have since been *nolle prossed*, thereby rendering his argument moot.

guidelines range" (internal quotation marks and citation omitted)). Accordingly, Worthey's argument that the district court was required to apply the clear-and-convincing-evidence standard fails.

The record supports the district court's findings regarding Worthey's pattern of sexually abusing his minor stepchildren. At sentencing, the government offered videotape statements by Worthey's stepchildren regarding their history of being sexually abused by Worthey. The district court found the statements sufficiently reliable to warrant their consideration. See United States v. Bastian, 603 F.3d 460, 466-67 (8th Cir. 2010) (no abuse of discretion in admitting three video interviews of minor victims of sexual abuse found by the court to be sufficiently reliable). The district court also considered two written reports concerning Worthey's stepchildren and the psychological harm they suffered from his sexual abuse, as well as Ward's testimony regarding his conversation earlier that day with Chandra, whose reports regarding the children were consistent with the written reports and the videotape statements. Based on this evidence, the district court did not err in applying the five-level enhancement.

Nor did the district court abuse its discretion in sentencing Worthey to 180 months' imprisonment, which represented a substantial downward variance below the bottom of the 235-240 months Guidelines range. "[W]here a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." Spencer, 700 F.3d at 322 (quoting United States v. Moore, 581 F.3d 681, 684 (8th Cir. 2009) (per curiam)). Given the number of images and videos found on the laptop, the nature of the images and videos, and the evidence regarding Worthey's pattern of sexual abuse, the district court did not abuse its discretion in refusing to vary even further downward.

III.  Conclusion

The conviction and sentence are affirmed.

SHEPHERD, Circuit Judge, concurring.

I concur in this court's decision affirming Worthey's conviction and sentence in all respects.  I write separately, however, to comment on the denial of Worthey's motion that his trial be moved from Little Rock to Jonesboro, his home and the location of the events giving rise to his prosecution, and to affirm that "it is the public policy of this Country that one must not arbitrarily be sent, without his consent, into a strange locality to defend himself against the powerful prosecutorial resources of the Government."  See United States v. Stanko, 528 F.3d 581, 586 (8th Cir. 2008) (internal quotation marks omitted).

While I agree that Worthey's case is distinguishable from Stanko and that the district court did not abuse its discretion in denying a change of venue in this case, I find suspect the government's[5] reliance in resisting Worthey's motion on the possibility that, due to the absence of secured hallways in the Jonesboro courthouse, the jury would view Worthey in custody, implying that trial in the more state-of-the-art Little Rock courthouse would not present this risk.

First, it is not clear from the record that a juror would never see a defendant in custody when tried in the Little Rock courthouse.  Second, it is not a given that prejudice to a defendant results from a juror seeing the defendant in custody before or during a criminal trial.  See United States v. Robinson, 645 F.2d 616, 617 (8th Cir.

---

[5]It is difficult to discern from the district court's September 7, 2011 order or September 21, 2011 order whether it relied on the government's explanation that the jury would view Worthey in custody as a grounds for denying the motion to transfer.

1981) (per curiam) (holding "brief and inadvertent exposure of defendants to jurors is not inherently prejudicial" and that defendant bears burden of "affirmatively demonstrating prejudice"). Further, the standard jury instructions—cautioning that the defendant is presumed innocent unless and until proven guilty beyond a reasonable doubt, and that an indictment is simply an accusation—minimize the potential prejudice arising from such an observation. See Eighth Circuit Manual of Model Jury Instructions: Criminal §§ 1.01, 3.05, 3.06 (2011). Third, if as here, the defendant is willing to risk being seen by the jury while in custody, then in my view, the court should not consider such a possibility as a factor supporting the denial of a requested change of venue or in conducting its Rule 18 analysis.

_____