# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3690

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Jason Albert Becht, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted:  August 21, 2001

Filed: October 3, 2001

_____

Before BYE, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

LAY, Circuit Judge.

Jason Albert Becht appeals his conviction for knowingly possessing, and disseminating through interstate commerce, child pornography, in violation of 18 U.S.C. § 2252A(a)(1) & (a)(5)(B).  Becht argues: (1) the district court's[1] admission of thirty-nine images of child pornography unfairly prejudiced his defense in violation of Federal Rule of Evidence 403, and (2) the Government offered insufficient evidence for the jury to find guilt beyond a reasonable doubt.  We reject

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

Becht's arguments and affirm his conviction.

## I. Background

In August, 1998, police in Fridley, Minnesota were informed by the U.S. Postal Inspector that a website displaying and disseminating child pornography was being maintained in Fridley. This information included the name of the website and the name of the registered owner of the website, one Jason Albert Becht. Acting on this information, as well as their own confirmation that the website contained child pornography, the police obtained a search warrant for Becht's home. Upon entering the premises, the police immediately discovered and seized a personal computer and other electronic equipment. No "hard-copy" child pornography was found in the home.

The Fridley police turned the computer over to the Federal Bureau of Investigation for analysis. That analysis revealed that there were approximately 11,000 pornographic images stored on Becht's computer. A number of those images graphically depicted children as young as four years old engaged in sexual activities. The analysis also revealed "transfer logs," records of files transferred to or from the computer. The FBI's computer forensic examiner testified that these logs revealed that 2077 pornographic images were on the computer by May 22, 1998, and 4464 images were on the computer by June 4, 1998. While the exact number of those images that constituted child pornography is unclear, the evidence reveals that the number may have been in the hundreds, and it is undisputed that some such images were present prior to July 4, 1998.

Ultimately Becht was charged with knowingly possessing and disseminating child pornography. At trial, Becht conceded that the images constituted child pornography but argued that he did not know that his website contained such images. To support this theory, Becht offered evidence that he activated a "robot program"

to disseminate the pornographic images from his website and wrote a program that automatically sorted incoming images into categories according to their file names. Thus, he argued, he did not look at the images that were on his computer and did not know that some of them constituted child pornography. Alternatively, he argued, the website contained so many images that, even if he had looked at the website, it was unlikely that he would have discovered that some of the images constituted child pornography.

The Government offered a variety of evidence that Becht did have the requisite knowledge. The Government showed that when Becht wrote the automatic sorting program he included subdirectories including "Young" and "Incest." It showed that the program was written to search for file names which included letter strings like "y-o-u-n-g," "y-u-n-g," or "l-i-t," as well as the numerals zero through nine, which the Government alleged corresponded with images of children of those ages. The Government offered expert testimony that a person running a pornographic website for profit would examine its appearance and functionality, and that even a cursory examination of the "Young" subdirectory would have revealed clear child pornography. The Government also offered evidence that the automatic sorting program did not function until July 5, 1998. Prior to that date, Becht had sorted the images by hand. Thus, the Government argued, Becht either had to view the file names, several of which strongly indicated child pornography,[2] or the images themselves to accurately sort the images. The Government argued that this evidence was more than sufficient to prove Becht's knowledge.

The primary dispute in this appeal involves some of the evidence the Government offered to prove the knowledge element of the crime. At trial, the

---

[2]The file names corresponding to the images offered by the Government included such titles as "kid01 (1," "rape_kid," "!kidpor2," "kids0055," "ourkids," "kidsex2," "06grl," "05and11," "02kids6," "05spread," and "04punish."

Government offered into evidence thirty-nine images of child pornography downloaded from Becht's computer. Becht objected prior to and at trial, as he does here, that the prejudicial effect of the images outweighed their probative value. In particular, Becht argued that the Government had offered to stipulate that the images were child pornography and that he had accepted the offer. Thus, he claimed, the images had no probative value at all. In response, the Government disputed the existence of such a stipulation, or that it had offered one. It also maintained that, regardless, it was within its rights to prove its case as it saw fit. The trial court overruled the objection. Subsequently, the Government displayed the thirty-nine images to the jury by bringing them up on a computer screen. It also provided hard copies of the images in a binder for the jury's use.

## II. Analysis

### A. Admission of the Images of Child Pornography

Evidentiary rulings of the district court are reviewed under an abuse of discretion standard. United States v. Phelps, 168 F.3d 1048, 1054 (8th Cir. 1999). Becht argues that the district court abused its discretion under Federal Rule of Evidence 403,[3] which allows a trial judge to exclude even relevant evidence on the grounds that its probative value is substantially outweighed by unfair prejudice. Specifically, Becht asserts two separate grounds on which the images should be excluded: (1) the stipulation that the images constituted child pornography eliminated their probative value, and (2) the balancing test set forth in Old Chief v. United States, 519 U.S. 172 (1997), demands exclusion.

_____

[3] Federal Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

### 1. The Stipulation

In their briefs, as well as in oral argument, the parties argue whether a stipulation existed, and if so, who offered it. As noted above, Becht argues that the Government offered, and that he accepted, a stipulation that the images constituted child pornography. According to Becht, this offer and acceptance created a binding stipulation, per traditional contract principles. The Government argues that it did not offer a stipulation and that none was agreed to.

The first question, of course, is whether this distinction is relevant. Both sides rely on Old Chief, where the Supreme Court reaffirmed the standard rule that "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." 519 U.S. at 186-87. The Court recognized that "the prosecution with its burden of persuasion needs evidentiary depth to tell a continuous story . . . ." Id. at 190. It noted that "[a] syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." Id. at 189. This circuit also has recently cited that general rule with approval. See United States v. Hill, 249 F.3d 707, 712 (8th Cir. 2001) (citing Old Chief, 519 U.S. at 186-87).

Becht counters by arguing that the general rule does not apply in a case such as this one where, as he asserts, the Government offers the stipulation. He argues that giving the Government a choice between stipulating and offering its proof does not preclude the Government from choosing the former, in which case it should be bound by its decision. Indeed, the language in Old Chief, as well as recent Eighth Circuit decisions, could be read to suggest such a distinction. See United States v. Gonzalez-Rodriguez, 239 F.3d 948, 953 (8th Cir. 2001) ("*[A] defendant's Rule 403 objection offering to concede a point* generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense.") (citing Old Chief, 519 U.S. at 183) (emphasis added); United States v. Barry, 133

-5-

F.3d 580, 582 (8th Cir. 1998) ("[A]s a general rule, the government is not bound by a *defendant's offer to stipulate*.") (emphasis added). Furthermore, one might argue that the better rule would not be one where the Government is allowed to have its cake and eat it too; it would seem unfair to allow the Government to entice a defendant into stipulating to an element of the crime by promising to forego the use of certain damaging evidence and then offering the evidence anyway.

Notwithstanding the ingenuity of Becht's argument, it cannot prevail. Even assuming that the Government offered to stipulate that the images constituted child pornography,[4] the defendant could not prevail on his theory under the circumstances

---

[4]Because of the following analysis, it is unnecessary for the court to consider in detail whether there was a binding stipulation. Indeed, the record seems to bear out that there was some agreement, if informal. Judge Davis accepted the "stipulation" as a court exhibit, for example. On the other hand, however, general principles of law would seem to weigh against holding this alleged unsigned agreement to be a binding stipulation. See 73 Am. Jur. 2d Stipulations § 2 (1974) ("It has been said that unless it is clear from the record that the parties assented, there is no stipulation, and it is provided in many jurisdictions . . . that a private agreement or consent between the parties or their attorneys, in respect to the proceedings in a cause, will not be enforced by the court unless it is evidenced by a writing subscribed by the party against whom it is alleged or made, and filed by the clerk or entered upon the minutes of the court."); id. at § 3 ("A stipulation which violates form requirements of a statute or a rule of court is ordinarily ineffective."). Moreover, if the court were to adopt the Government's version of the disputed facts, that the parties were merely discussing a stipulation and that the draft at issue was merely part of the bargaining process, then defendant's contract theory would fail, as a party cannot create a contract by "accepting" something that is not an offer. See 17A Am. Jur. 2d Contracts § 43 (1991) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it. However, a manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.").

of this case.[5]

From the record, it is fairly clear that any stipulation offered by the Government went to the nature of the images as child pornography.[6] The illegal nature of the images, however, is only one element of the offense. As the defendant appeared to concede several times, that element was not the most important one: "The central issue in this case, indeed, the only one as to which there is meaningful disagreement, is what Mr. Becht knew and whether he was aware of possessing and transmitting the charged documents." Defendant's Motion In Limine re: Stipulation to Elements of Charged Offenses at 1 (May 30, 2000). The Government spends several pages of its brief to this court asserting the same point and arguing that the images are probative of that element of the crime, as well as their own nature. See Appellee's Brief at 13-22.

In Old Chief, the Court honored this "multiple utility" rationale as additional grounds on which to reaffirm the general rule that the Government is free to offer the evidence as it sees fit. The Court noted that evidence may be valuable not only for its relevance to a single element, but also because it may at once prove multiple

---

[5]Moreover, it is not at all clear that the rule proposed by the defendant is or would be the rule in this circuit. See Hill, 249 F.3d at 713 (holding that, absent a stipulation going to the fact of status as a felon, "the rationale for the limited rule of Old Chief disappears, as [defendant's] stipulation 'cannot give the Government everything the evidence could show.'") (citing United States v. Crowder, 141 F.3d 1202, 1207 (D.C. Cir. 1998) (en banc)).

[6]In Becht's brief to this court, for example, he speaks in terms of two stipulations. When defendant discusses the stipulation allegedly offered by the Government, he states that the Government offered to stipulate that the images were child pornography. See Appellant's Brief at 12. However, when discussing stipulations regarding the knowledge element, defendant only states that *he* offered to stipulate that the file names were indicative of the nature of the images. See Appellant's Brief at 7, 13; Appellant's Reply Brief at 9.

elements or embolden a jury to infer guilt by strengthening the evidentiary picture as a whole. It held:

> Unlike an abstract premise, whose force depends on going precisely to a particular step in a course of reasoning, a piece of evidence may address any number of separate elements, striking hard just because it shows so much at once . . . . Evidence thus has force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.

Old Chief, 519 U.S. at 187. We believe this rationale applies equally here.

Part of the Government's proof depended upon the jurors' willingness to infer that Becht saw his own website and that what he saw would have put him on notice of its illegal content. Alternatively, the Government needed to offer evidence that the file names Becht hand-sorted actually corresponded with images of child pornography so that he was able to place them in the appropriate subdirectory. To these ends, a stipulation that the images constituted child pornography would have been ineffective. Thus, defendant's argument that the alleged stipulation renders the images irrelevant fails. The fact that the images are relevant to an element other than their nature as illegal child pornography makes defendant's theory inapplicable.

As noted above, however, the stipulation as to the nature of the images was not the only one proposed, nor the one that best addresses the knowledge element. Becht admits that he offered to stipulate that the file names indicated child pornography. However, the Government was not required to accept this offer. Becht's own statements place this case squarely within the general rule that a defendant cannot offer to stipulate himself away from the full weight of the

Government's evidence.  Old Chief, 519 U.S. at 186-87.

## 2. The Balancing Test

Becht next contends that, regardless of the stipulation, the district court abused its discretion because the balancing test espoused by the Supreme Court in Old Chief demands exclusion of the disputed images.  We believe, contrary to the defendant, that the balancing test favors inclusion in this case.  Thus, we reject defendant's claim.

As this court has recently noted, see Hill, 249 F.3d at 710-13, the courts' understanding of Rule 403 has undergone something of a transformation in recent years.  Prior to Old Chief, this circuit, for example, granted prosecutors very broad discretion notwithstanding the rule.  See, e.g., United States v. Smith, 520 F.2d 544, 548 (8th Cir. 1975) (holding that the Government had a right to reject a defendant's stipulation regarding his criminal history).  In Old Chief, however, the Court espoused a balancing test to be used in applying Rule 403.[7]  This test demands not only a comparison of the probative value and prejudicial effect of the disputed

---

[7]Old Chief described the balancing test as follows:

On objection, the court would decide whether a particular item of evidence raised a danger of unfair prejudice.  If it did, the judge would go on to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well.  If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk.

Old Chief, 519 U.S. at 182-83.

evidence, but of the relative probative value and prejudicial effect of any evidentiary alternatives as well. If an evidentiary alternative has equal or greater probative value and poses a lower risk of unfair prejudice, the trial court should "discount" the probative value of the disputed evidence and exclude it if the risk of unfair prejudice substantially outweighs its discounted probative value.[8]

In this case, the probative value of the thirty-nine images was high. The Government offered evidence that Becht had seen those images. As noted above, the Government offered expert testimony that the proprietor of a pornographic website likely would have accessed his website to assess its appearance and functionality. The Government also showed that the most cursory check of the "Young" subdirectory would have revealed child pornography. In addition, the Government offered evidence that child pornography had been successfully sorted by hand into the "Young" subdirectory. As part of its proof in this respect, the Government asked the jurors to infer that Becht must have seen the images in the course of this sorting process.

The Government also asked the jurors to infer, from the appearance of the images, that Becht would have known the images were child pornography with even

---

[8]At least one circuit has used this balancing test to exclude images of child pornography from evidence. See United States v. Merino-Balderrama, 146 F.3d 758 (9th Cir. 1998). In Merino-Balderrama, the trial court had admitted films depicting child pornography for the purpose of proving the films' content and defendant's knowledge thereof. The Ninth Circuit reversed. It held that the defendant's offer to stipulate to the films' content precluded the necessity of further proof on that element. Based on a finding that the defendant had never seen the films, the court also found little probative value as to the knowledge element. Coupled with a finding of a high risk of prejudice, as well as the availability of the films' covers, which also depicted child pornography and which the defendant had admitted to seeing, the court held that the trial judge had violated Rule 403 by admitting the films. The case at bar, however, is easily distinguished from Merino-Balderrama.

a quick glance. These were not "close cases" of child pornography, for example, those of fifteen or sixteen year old girls. Rather, these were images involving four or five year old children. Only by viewing the images could the jury understand how likely it was that even a glance would have revealed the presence of illegal images.

The Government and the trial court also took pains to limit the prejudicial effect of the images. During voir dire, the Government and defense counsel made a point to warn prospective jurors of the nature of the images. The court excused for cause three jurors who stated that they would not be able to view such images without prejudicing the defendant. Only thirty-nine of the hundreds of illegal images discovered were admitted. Each image was shown to the jury for only a few seconds.

Moreover, the images at issue were still photos. Several courts, including the Merino-Balderrama court, have found that admission of still images of child pornography does not rise to the level of unfair prejudice. See, e.g., United States v. Hay, 231 F.3d 630, 638-39 (9th Cir. 2000); United States v. Campos, 221 F.3d 1143, 1148-49 (10th Cir. 2000); United States v. Merino-Balderrama, 146 F.3d 758, 762-63 (9th Cir. 1998); United States v. Dean, 135 F. Supp.2d 207, 209-11 (D. Me. 2001). We agree and, in light of the efforts at trial to limit the prejudicial effect of the images, hold that such an effect is absent, or at least considerably lessened, here.

Finally, satisfactory evidentiary alternatives were absent in this case. As noted above, even defendant's offer to stipulate that the file names are indicative of the nature of the images falls short, not only in terms of "evidentiary richness," Old Chief, 519 U.S. at 183, but also because such a stipulation fails to address entirely the Government's to need distinguish these images from the "close cases" of child pornography. More importantly, the Government was not required to accept that stipulation. We believe that the Old Chief Court made clear that, absent the unusual

circumstance of prior criminal status, the Government is free to offer its evidence as it sees fit. See Hill, 249 F.3d at 713 (holding that "the rationale for the limited rule of Old Chief disappears," when a stipulation goes to any element of the crime other than criminal status).

For these reasons, we disagree with Becht that the images of child pornography should have been excluded under the Rule 403 balancing test. At the very least, the district court did not abuse its discretion in admitting them.

**B. Insufficient Evidence**

"The standard of review for sufficiency of the evidence claims is whether, in the light most favorable to the government, and giving the government the benefit of all reasonable inferences, there is substantial evidence to support the jury's verdict." United States v. Beckman, 222 F.3d 512, 521-22 (8th Cir. 2000) (citing United States v. Gaines, 969 F.2d 692, 696 (8th Cir. 1992)). "The standard for determining the sufficiency of the evidence is strict, and a guilty verdict should not be lightly overturned. . . . '[W]e will reverse only if the jury *must* have had a reasonable doubt concerning one of the essential elements of the crime.'" United States v. Dugan, 238 F.3d 1041, 1043 (8th Cir. 2001) (emphasis added) (internal citations omitted). "Both direct and circumstantial evidence can be the basis of a conviction." Beckman, 222 F.3d at 522 (citing United States v. Erdman, 953 F.2d 387, 389 (8th Cir. 1992)).

In this case, two of the essential elements are undisputed, child pornography and transport through interstate commerce. As Becht concedes, the only element at issue is his knowledge that his website contained child pornography. The evidence offered by the Government to prove actual knowledge or deliberate ignorance has been set forth above. Upon review, we cannot say that, viewed in the light most favorable to the Government, no reasonable jury could have found Becht

guilty beyond a reasonable doubt.  See United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995) ("We reverse only if we conclude that 'no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt.'") (citing United States v. Logan, 49 F.3d 352, 360 (8th Cir. 1995)).

After having thoroughly reviewed the record and given careful consideration to each of the issues raised by Becht in this appeal, we find no prejudicial ground of error.  The district court's decision is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.