# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1018

_____

United States of America,

    Appellee,

v.

Michael Shawn McCourt,

    Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the Western
District of Missouri.

_____

Submitted: September 26, 2006
Filed: November 24, 2006

_____

Before LOKEN, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Michael Shawn McCourt appeals his conviction for attempted distribution and attempted receipt of child pornography over the Internet and possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(2), (4). McCourt challenges the district court's[1] admission into evidence and publication to the jury of seven three-second video clips of child pornography, alleged discovery violations by the Government, the district court's refusal to give a theory-of-defense instruction and his

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

sentence under the Ex Post Facto and Due Process clauses. We reject McCourt's arguments and affirm his conviction and sentence.

## I.    BACKGROUND

McCourt used his personal computer to download pornography from the Internet. Using peer-to-peer file-sharing programs, McCourt entered Internet chat rooms dedicated to particular pornographic interests for the purpose of trading files with others in the room. The file-sharing program allowed McCourt to designate which files on his computer he would share and advertise the type of files he sought. McCourt advertised in the chat rooms that he was seeking videos and images of "young forced nudity" and "young amateurs."

In July 2003, Detective Shlomo Koenig of the Rockland County, New York Sheriff's Department entered a chat room named "#100%PRETEENGIRLSEXPICS" where McCourt had posted files for others to download. Detective Koenig downloaded three images of child pornography from McCourt's computer and forwarded them to the Platte County, Missouri Sheriff's Department for further investigation.

Based on this information, the Platte County Sheriff's Department obtained and executed a search warrant at McCourt's home on August 8, 2003. During the search, McCourt's computer was seized. Forensic analysis of the computer eventually resulted in the discovery of 320 files containing still images and videos of child pornography. He had cataloged the files on his computer by file type into folders he named "Music_TV," "Pic" and "Video."

McCourt was subsequently indicted for attempted distribution of child pornography over the Internet, two counts of attempted receipt of child pornography over the Internet, and possession of child pornography in violation of 18 U.S.C. §§

2252(a)(2), (4). The Overland Park Police Department arrested McCourt on December 17, 2004. McCourt was given his *Miranda* rights and agreed to talk to law enforcement. McCourt told the officers he was interested in "amateur" and "voyeur" pornography. He admitted to sorting the pornographic files into folders on his computer but denied looking at a single file before moving it into the appropriate folder. McCourt also admitted to discovering child pornography on his computer, but he claimed that he always deleted it.

Prior to trial, the parties stipulated that McCourt's computer had 320 files containing child pornography, of which more than 175 were videos. The stipulation included descriptive names of the files, whether they were still images or videos, and an admission that each contained images of actual minors engaged in sexually explicit conduct. In addition to the stipulation, the Government selected three still images and seven three-second video clips that it wished to publish to the jury. McCourt filed a motion in limine to exclude publication of the video clips. The district court held an in-chambers conference and overruled McCourt's motion.

Also prior to trial, the Government's expert, Detective Mike Jacobson, produced three reports regarding the content of McCourt's computer, how the peer-to-peer programs were operated on McCourt's computer, and when the child pornography files on McCourt's computer were created. McCourt's expert, Troy Schnack, also produced a report, using a different method from Jacobson to calculate the number of files downloaded from the peer-to-peer programs onto McCourt's computer. Despite the different calculation methods, Jacobson and Schnack agreed that the total number of files downloaded exceeded 24,000. Moments before the Government's opening statement, Jacobson alerted Government counsel that due to a mistake he had made in one of his reports, he now agreed with Schnack's method of calculating the number of downloaded files. The Government made no mention of the number of downloads or method of calculation in its opening statement. On cross-examination, Jacobson admitted to the mistake and agreed with Schnack's method in

reaching the 24,000 file estimate. Additionally, on direct examination, Jacobson clarified a different mistake in his report regarding the computer's time-stamp function. McCourt's counsel addressed both mistakes and their consequences in closing argument.

During the trial, McCourt attempted to establish that a hacker, not McCourt, uploaded the illegal files onto his computer through the peer-to-peer programs and that he had no intent to distribute or possess the unsolicited child pornography. McCourt subsequently requested a theory-of-defense instruction stating inter alia that it was the Government's burden to prove the identity of the person that committed the offenses beyond a reasonable doubt. Finding that the proffered instruction was inaccurate and that the instructions defining knowledge and intent were sufficient to address McCourt's theory of his case, the district court declined to give the proffered instruction.

The jury convicted McCourt on all counts, and the district court sentenced him to 120 months' imprisonment.

## II. DISCUSSION

### A. Publication of the Video Clips

We review for an abuse of discretion the district court's evidentiary rulings. *United States v. Becht*, 267 F.3d 767, 770 (8th Cir. 2001). McCourt does not challenge the relevance of the video clips under Fed. R. Evid. 401, but rather focuses his argument on his claim that unfair prejudice resulted from the district court's admission of the seven three-second video clips. Specifically, McCourt asserts: (1) in light of his stipulation that the video clips contained child pornography, the clips should have been excluded as a matter of law under *Old Chief v. United States*, 519 U.S. 172 (1997); and (2) the district court failed to engage in a Rule 403 balancing test

in deciding whether to admit the video clips or allow his stipulation as a substitute. We address these arguments in turn.

Rule 403 allows a trial judge to exclude relevant evidence on the grounds that its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. *Old Chief* instructs district courts to discount the probative value of the disputed evidence if it poses a risk of unfair prejudice and an evidentiary alternative has equal or greater probative value. 519 U.S. at 182–83; *Becht*, 267 F.3d at 773. Stipulating to an element of the offense does not generally constitute an evidentiary alternative having equal or greater probative value. *United States v. Sewell*, 457 F.3d 841, 844 (8th Cir. 2006). Accordingly, "a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense." *Old Chief*, 519 U.S. at 183. In essence, the Government "is entitled to prove its case by evidence of its own choice," and "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *See id.* at 186–87.

In *Old Chief*, the Supreme Court held that the defendant's stipulation to a prior felony to establish his status as a felon, which was an element of the charged offense, was sufficient to preclude the Government from offering additional evidence on this point. 519 U.S. at 191. However, the Court expressly limited its holding to cases where "proof of convict status is at issue," *id.* at 192, and our cases agree. *Becht*, 267 F.3d at 774 ("We believe the *Old Chief* Court made clear that, absent the unusual circumstance of prior criminal status, the Government is free to offer its evidence as it sees fit."); *United States v. Hill*, 249 F.3d 707, 713 (8th Cir. 2001) (noting that "the rationale for the limited rule of *Old Chief* disappears" when a stipulation goes to any element of the crime other than criminal status). As such, we have upheld publication of child pornography images to the jury over a defendant's offer to stipulate to their content. *Sewell*, 457 F.3d at 844 (reversing the exclusion of 23 images proffered for

publication for three or four seconds each); *Becht*, 267 F.3d at 774 (upholding the admission of 39 images published to the jury on a computer screen and distributed as hard copies). We believe McCourt's *Old Chief* argument is decided by our precedent.

McCourt next argues that the district court abused its discretion by failing to conduct a balancing test as required by Rule 403. McCourt's contention is not supported by the record because during the motion in limine conference the district court stated that the Government's agreement to publish the videos for only a few seconds each was "certainly a better and potentially less prejudicial way to proceed than to show the entire file." While this may not amount to a lengthy analysis, "the district court's mere failure to make a record of its Rule 403 weighing is not reversible error." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 885 (8th Cir. 2006); *see also United States v. Flaherty*, 76 F.3d 967, 973 n.5 (8th Cir. 1996) ("A district court is not required to make explicit findings regarding its Rule 403 balancing."), *abrogated on other grounds by United States v. Ryan*, 227 F.3d 1058, 1062 (8th Cir. 2000). We find nothing in the record to indicate that the district court did not conduct a Rule 403 analysis when faced with McCourt's motion in limine. *Smith*, 436 F.3d at 885 ("We presume that the district court weighed this evidence pursuant to Rule 403 because the district court ruled on motions and objections in which [defendant] specifically requested that the court weigh the probative value of the records against their prejudicial effect.").

Moreover, a more thorough balancing evaluation would not demand exclusion of the video clips in this case. McCourt fails to recognize that the Supreme Court has advised that Rule 403 requires a preliminary showing of unfair prejudice before the need to balance the probative value of the evidence and its alternatives arises. *Old Chief*, 519 U.S. at 182 ("On [a Rule 403] objection, the court would decide whether a particular item of evidence raised a danger of unfair prejudice. *If it did*, the judge would *go on* to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitute as well.") (emphasis added).

The only argument that McCourt offers in support of his unfair prejudice claim is that videos of child pornography, more so than still images, arouse emotions that a jury is unable to set aside in reaching its verdict. While the videos were no doubt unfavorable to McCourt, "the fact remains that [Rule 403] does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is *unfairly* prejudicial." *United States v. Johnson*, 463 F.3d 803, 809 (8th Cir. 2006) (internal quotation omitted) (emphasis added). McCourt may be correct that videos are qualitatively different from still images, but it is also true that a video is nothing more than a series of still images shown in rapid succession to create the illusion of motion. Only seven videos out of the more than 175 found on McCourt's computer were shown to the jury and each for only three seconds. Because any illusion of motion created by a mere three seconds of video is surely minimal, we see little qualitative difference between the limited publication of these seven videos and the publication of still images for longer durations, as upheld in our prior cases. *See Sewell*, 457 F.3d at 844 (reversing exclusion of more than 60 seconds of still images); *Becht*, 267 F.3d at 774 (upholding 39 images displayed and hard copies distributed to jurors). Moreover, unlike in *Becht* and *Sewell*, which dealt with the defendant's collection of still images, we see no reason here that the Government must limit its evidence to still images because McCourt did not so limit his collection.

Given the limited number of videos and their minimal duration, we do not find that their publication to the jury constitutes unfair prejudice. Consequently, because McCourt failed to make a preliminary showing of unfair prejudice, we are not required under Rule 403 to assess and weigh the probative value of the videos or the alternative provided by McCourt's stipulation.

## B.  The Alleged Discovery Violation

McCourt argues that the Government violated Fed. R. Crim. P. 16 by failing to disclose in a timely fashion changes in the opinion of its expert witness. Specifically,

McCourt argues that the Government should have disclosed mistakes in Jacobson's report regarding: (1) the computer's time-stamps; and (2) the method of calculating the number of files downloaded onto McCourt's computer. The thrust of McCourt's argument is that because the mistakes were not revealed until the direct and cross-examination of Jacobson, he was denied the opportunity to address these errors both in opening statement and in the cross-examinations of the witnesses that preceded the expert.

Because McCourt did not object in the district court, our review is for plain error. *United States v. Litrell*, 439 F.3d 875, 881 (8th Cir. 2006). "We will reverse under plain error review only if the error prejudices the party's substantial rights and would result in a miscarriage of justice if left uncorrected." *Id*. at 881–82. "In most cases, for an error to affect substantial rights it must affect the outcome of the proceedings." *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006).

We believe McCourt's substantial rights were not violated. Assuming that there was a Rule 16 violation, McCourt was not prejudiced because his expert, Schnack, had all the raw data on which Jacobson relied; Schnack discovered the calculation mistake before trial; the Government did not rely on either mistake in its case-in-chief; both mistakes were conceded by Jacobson on direct or elicited by McCourt on cross; McCourt exploited both mistakes in closing argument; and—most importantly—the mistakes were immaterial. The time-stamp mistake arguably revealed that three files on McCourt's computer were downloaded while he was at work, thereby supporting his claim that someone else put the files on his computer without his knowledge. In light of the remaining 300-plus videos and images uploaded during times for which McCourt asserted no alibi, we find it hard to say that McCourt was prejudiced by the Government's failure to disclose Jacobson's mistake, especially where the mistake was uncovered by McCourt's expert and its consequences argued to the jury by McCourt's counsel. Likewise, we are unable to discern the prejudice resulting from the untimely disclosure that Jacobson ultimately agreed with Schnack's method of estimating that over 24,000 files were downloaded using the peer-to-peer programs.

In sum, we see nothing that affected McCourt's substantial rights, and in light of the strong evidence admitted against him we cannot say that this alleged error affected the outcome of the trial.

## C. Denial of the Theory-of-Defense Instruction

We review for an abuse of discretion the district court's refusal to give a specifically worded theory-of-defense instruction. *United States v. Ellerman*, 411 F.3d 941, 945 (8th Cir. 2005). We also consider whether "the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." *United States v. Katz*, 445 F.3d 1023, 1030 (8th Cir. 2006). McCourt contends that the heart of his defense was that a hacker placed the illegal images on his computer without his knowledge and that he was entitled to have the jury instructed on this theory.

First, we note that the identity of the person who uploaded the files onto McCourt's computer is not relevant to whether McCourt knowingly possessed the files. Second, after reviewing the instructions in their totality, we are persuaded that they fairly and adequately apprised the jury of its duty to find that McCourt was the actual person who knowingly committed the offenses. Specifically, each of the instructions given on the substantive offenses required that the jury find that the "*Defendant* . . . knowingly" reproduced for distribution, received and possessed the illegal material. (Emphasis added). The instructions for the inchoate offenses stated that a "person may be found guilty of attempt if *he* intended . . ." and further explained that this element must be "proved beyond a reasonable doubt *as to the Defendant*." (Emphasis added). Likewise, the instructions on intent and knowledge sufficiently apprised the jury that it was the defendant's state of mind that they must consider. McCourt's theory of defense was, in essence, that the Government had failed to carry its burden of proving he committed the offenses. Thus, giving the proffered instruction in this case would have duplicated the instructions outlining the elements of the offense. *See United States v. Serrano-Lopez*, 366 F.3d 628, 637 (8th Cir. 2004) (holding that a requested mere-presence instruction would have duplicated the

instructions outlining the elements of the offense, the definition of possession, and the burden of proof). On the whole, we find that the jury was adequately instructed that it was the Government's burden to prove the identity of the person who committed the offenses beyond a reasonable doubt. We cannot say, therefore, that the district court abused its discretion in failing to give McCourt's proffered theory-of-defense instruction.

## D. Ex Post Facto and Due Process Challenges

McCourt's challenge to the application to him of the remedial portion of the *Booker* decision is precluded by our decision in *United States v. Wade*, 435 F.3d 829, 831 (8th Cir. 2006).

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____