# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1540

_____

United States of America

*Plaintiff - Appellee*

v.

Michael James Allison

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 8, 2014
Filed: December 1, 2014

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

After Michael Allison defrauded his employer Airgas of hundreds of thousands of dollars, the company terminated his employment and canceled his stock options. The United States charged him with mail fraud in violation of 18 U.S.C. § 1341, and

he pled guilty. The district court[1] sentenced Allison to 24 months imprisonment and ordered him to pay restitution of $560,000. Allison appeals the restitution order, arguing that his obligation should be offset by the value of his canceled stock options; the government disagrees. We affirm the order of the district court.

Allison worked at Airgas from 2000 to 2013 in various positions including vice president of finance and chief financial officer. Starting in 2003 Allison began to defraud his employer by submitting false expense reimbursement requests. He executed his fraud both by fabricating or altering documents, such as receipts and credit card statements, and mischaracterizing personal expenses as business expenses. An internal Airgas audit of Allison's expense reports, begun in late 2012, uncovered the fraudulent claims. Airgas's audit ultimately calculated that the total loss to the company was $630,350.40, and Airgas terminated Allison's employment in February 2013. Federal jurisdiction is based on his submitting expense report requests through the United States Postal Service.

During the course of his employment, Allison acquired Airgas stock options. The stock options were governed by an equity incentive plan, which provided that "[u]pon termination of [employment] for Misconduct, all outstanding Options and SARs [stock appreciation rights] held by the Participant shall terminate immediately and cease to be outstanding." The plan defined "Misconduct" as "the commission of any act of fraud, embezzlement or dishonesty by the Participant." One month after Allison was fired, an Airgas governance committee gave him an opportunity to make his own statement. Subsequently the committee concluded that Allison had been guilty of misconduct and terminated his stock options. Allison acknowledges that the options were properly terminated under the plan.

---

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

-2-

In June 2013 Allison pled guilty to one count of mail fraud. At sentencing the district court heard testimony on the issue of restitution from Allison and from David Coyne, the vice president of internal auditing for Airgas. Coyne testified that the options had been accounted for as an expense on Airgas's balance sheets at the time they vested, so that if the options were canceled or never used, they could not be reported as income. Coyne also testified that there was no financial benefit to Airgas from cancelling the options. According to Allison, he had approximately 13,000 stock options on the date of his termination (a value of approximately $735,000 if exercised). He also claimed that the cancellation of the options created a realizable increase in value for shareholders. Allison argued that he was entitled to an offset for the amount he would have received had he exercised his stock options before they were canceled by Airgas. He also sought credit for roughly $5,200 in expenses which Coyne acknowledged were valid but had never been reimbursed by Airgas.

In February 2014 the district court ordered Allison to pay $560,000 in restitution, declining to credit Allison for the value he claimed for the cancelled stock options. The court stated that the options had been validly terminated so Airgas owed Allison nothing for them. It further explained that their cancellation "did not result in a savings to the company in a way that would provide an offset." In light of Allison's fraud, the court also found it difficult to credit his claims that he had legitimate expenses which had not been reimbursed. Nonetheless, the court ordered a ten percent reduction ($62,000) in Allison's restitution obligation, explaining that that "more than adequately gives the defendant credit for disputed items."

Allison now renews his restitution arguments that he was entitled to an offset for the stock options and that the district court failed to account for $5,200 in his legitimate expenses. We review for clear error "the district court's factual finding of loss relating to restitution." United States v. Cupit, 169 F.3d 536, 539 (8th Cir. 1999). An award of restitution is reviewed for abuse of discretion, and district court

interpretations of the Mandatory Victims Restitution Act (MVRA) are reviewed de novo. United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011).

The MVRA requires defendants convicted of crimes committed by "fraud or deceit" to compensate victims for the full amount of their losses. 18 U.S.C. §§ 3663A(c)(1)(A)(ii), 3664(f)(1)(A). Allison argues that Airgas actually profited about $175,000 from his fraud because his unexercised options were worth more than its loss. The district court determined that Airgas did not actually owe Allison anything for the options because the equity incentive plan provided for them to be forfeited when an employee is terminated for cause. Allison's claim that the company had gained $735,000 was also controverted. Vice President Coyne testified that the cancellation of the options neither provided a financial benefit to the company nor positively affected its balance sheet. We conclude that the district court did not err in ruling that the cancellation of Allison's stock options had not resulted in a savings to Airgas supporting an offset.

In support of his offset claim Allison cites United States v. Frazier, 651 F.3d 899, 901 (8th Cir. 2011), a case in which a defendant set fire to the home he lived in under a rent to own contract. Following the fire, the victim owner of the home retained funds which the defendant had deposited into an account for a future purchase. Id. at 901–02. We concluded that an offset against restitution was appropriate in the amount of the retained funds since the victim likely was contractually entitled to retain those funds to secure itself against damage to the property. Id. at 910–11. Unlike the contract in Frazier, the equity incentive plan here did not permit the company to retain the value of stock options to secure itself against loss. Rather, these options are a form of employee compensation which Airgas does not offer employees terminated for misconduct. Allison himself acknowledges that the termination of the options was valid. In sum, we conclude that the district court properly denied Allison's request to offset the options against his mandatory restitution obligation.

-4-

Allison also claims that the district court erred in calculating the loss amount because it had not subtracted from the restitution award the $5,200 which he had not been reimbursed.  This claim is without merit because the district court reduced the restitution award by $62,000 to account for any disputed sums.

The restitution order of the district court is affirmed.

_____