# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1707
_____

United States of America

*Plaintiff - Appellee*

v.

Robert Carey Evans

*Defendant - Appellant*

_____

No. 14-3112
_____

United States of America

*Plaintiff - Appellee*

v.

Robert Carey Evans

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: June 12, 2015
Filed: September 18, 2015
_____

Before LOKEN, BYE, and KELLY, Circuit Judges.

KELLY, Circuit Judge.

## I. Background

In August 2012, Special Agent Jesse Smith with the North Dakota Bureau of Criminal Investigations began investigating computer IP addresses in North Dakota that were suspected of downloading child pornography. The IP addresses were traced back to Robert Evans. Smith contacted Special Agent Mike Arel with Homeland Security and obtained a search warrant for Evans's apartment in Fargo, North Dakota, which was executed in November 2012. During Smith's forensic examination of Evans's computers, hard drives, and DVDs (collectively, media devices), he found more than 23,000 images and 1,300 video files depicting child pornography. Evans was charged in a Third Superseding Indictment with one count of transportation of child pornography and fourteen charges of possession of child pornography. Evans was convicted on fourteen counts of possession of child pornography in violation of 18 U.S.C. § 2252A.[1] The district court[2] sentenced Evans to 120 months' imprisonment and ordered him to pay $3,250 in restitution to one of the victims depicted in the child pornography in Evans's possession. Evans appeals two evidentiary decisions made by the district court during trial and the restitution award. Having jurisdiction to consider this appeal under 28 U.S.C. § 1291, we affirm.

_____

[1]The transportation charge was dismissed on Evans's motion at trial.

[2]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

## II. Discussion

### A. Images and Video Clips

The government proposed to show the jury 14 images and 22 video clips of child pornography located on Evans's media devices—36 items total. Evans had already stipulated that his media devices contained child pornography, and he asked the court to allow the government to show no more than 3 images and limit the time they were shown to the jury to approximately 10 seconds per image. The objection, as articulated by defense counsel outside the presence of the jury, was that it was "unnecessary and cumulative to show more than approximately three images, that it would also I think have a tendency to confuse and possibly just create such an emotional reaction in the members of the jury that it would be impossible for Mr. Evans to get a fair trial here." Defense counsel also asserted it was "unnecessary to traumatize the jury by requiring them to watch more than three of these images." The district court overruled Evans's objection, and allowed the introduction of the government's proposed 14 images and 22 video clips.

On appeal, Evans argues that the district court erred by failing to conduct the balancing analysis—comparing the probative value of the proffered images and video clips to the danger of an unfairly prejudicial effect, as well as the relative probative value and prejudicial effect of evidentiary alternatives—required by Federal Rule of Evidence 403. Evans does not dispute that the images and video clips are probative. Instead, he asserts that "[s]howing the jury actual images was simply cumulative and, due to their obvious and unavoidable emotional impact, unduly prejudicial." Evans also argues that the court failed to consider his stipulation that the media devices

contained depictions of child pornography[3] and the option of presenting fewer images or only the file names to the jury. The admission of this evidence by the district court is reviewed for an abuse of discretion. United States v. Battle, 774 F.3d 504, 511 (8th Cir. 2014).

When addressing Evans's objection, the district court considered the number of images and video clips the government sought to show to the jury,[4] as well as the amount of time the jury would be exposed to them. The district court noted that it would take approximately 5 minutes to show the 14 images and 22 video clips to the jury. During a portion of that time, the jury saw only the file name preceding the image or video clip.[5] The court also took into consideration the impact this evidence may have on the jury, recognizing the legitimate goal of "trying to spare the jury the trauma." Ultimately, the court concluded there was "no risk of any sort of undue delay or cumulative evidence being presented," and stated that "it strikes me that this number of images is within the range of what would be appropriate." Despite Evans's assertion otherwise, the district court did conduct a Rule 403 analysis before

[3]To the extent Evans argues that his stipulation alone precludes the introduction of any images or video clips, his argument is foreclosed by our precedent. See United States v. Worthey, 716 F.3d 1107, 1114 (8th Cir. 2013) (holding the court does "not prohibit publication of child pornography video clips to the jury over the defendant's offer to stipulate to their content").

[4]The government argued, and the district court considered, the fact that only 36 files were shown to the jury from over 24,000 child pornography files found in Evans's possession. We note, however, that there is no proportionality test for determining whether a set number of images and/or videos may properly be shown to a jury under Rule 403. To apply a purely mathematical test would be to ignore the importance of considering the nature of the particular evidence as well as any effect showing the evidence may have on the jury's ability to be fair and impartial.

[5]File names themselves can be disturbing, as they sometimes describe in detail the contents of the image or video of child pornography. However, Evans does not assert that the file names shown to the jury were impermissibly inflammatory.

ruling on his objection. See United States v. McCourt, 468 F.3d 1088, 1092 (8th Cir. 2006) ("While [the district court may not have conducted] a lengthy analysis, "'the district court's mere failure to make a record of its Rule 403 weighing is not reversible error'").[6]

Furthermore, while Evans argues that the district court abused its discretion when allowing the government to show these images and video clips, he does not articulate what unfair prejudice resulted from the publication of this evidence to the jury. See McCourt, 468 F.3d at 1092 ("[T]he Supreme Court has advised that Rule 403 requires a preliminary showing of unfair prejudice before the need to balance the probative value of the evidence and its alternatives arises."). Images and videos depicting child pornography are by their very nature disturbing, and viewing such depictions is highly likely to generate an emotional response. But that alone cannot be the reason to exclude the evidence. See McCourt, 468 F.3d at 1092 ("'[Rule 403] does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is *unfairly* prejudicial.'" (quoting United States v. Johnson, 463 F.3d 803, 809 (8th Cir. 2006))). An excessive number of, or particularly inflammatory, depictions indeed might amount to unfair prejudice. But Evans does not argue that the images and video clips shown were not representative of the type of materials found on his media devices. Nor does he allege that the government selected particularly graphic images or video

---

[6]We note that the government did not articulate why it chose the particular images and video clips that it did. Had the government done so, the district court would have been in a position to conduct a more fact-specific and better-informed balancing analysis. The only argument the government provided at trial was that it needed to show the jury that some of the files did, in fact, contain images or videos depicting child pornography, even though the files were mislabeled. The government did not elaborate on this theme, however, and it is not clear on appeal whether the images and video clips shown to the jury were the ones the government asserts were mislabeled.

clips, the nature of which might have unnecessarily inflamed the jury or aroused emotions the jury would be unable to set aside. See Worthey, 716 F.3d at 1114–15. Similarly, Evans articulates no convincing reason for us to conclude that the number of files shown in this case or the amount of time the jury was required to spend reviewing them was impermissibly excessive. See, e.g., United States v. Becht, 267 F.3d 767, 770, 774 (8th Cir. 2001).

On this record, we cannot say that publication of the images and video clips to the jury was unfairly prejudicial. Without a preliminary showing of prejudice, "we need not consider or weigh the probative value" of the images and video clips. Worthey, 716 F.3d at 1115. Because there has been no showing of unfair prejudice, we cannot conclude that the district court abused its discretion in admitting the images and video clips. See Worthey, 716 F.3d at 1110–11, 1114–15 (affirming the admission of five seconds each of nine videos out of 200 videos and 204 images found in the defendant's possession); McCourt, 468 F.3d at 1093 (affirming the admission of seven video clips found in the defendant's possession); Becht, 267 F.3d at 770, 774 (affirming the admission of 39 still images of child pornography and the provision of hard copies of the photos to the jury).

## B. Testimony Regarding Stories

Before trial, the government moved in limine to introduce stories found on Evans's media devices about adult men engaging in sexual acts with minors. The district court denied the motion on the grounds that "at this time, the stories are probative only of Evans's prurient interest in children," adding that it would reconsider the government's motion if Evans "open[ed] the door" during trial. Early in the trial, the government renewed its motion to introduce evidence of the stories, asserting "that the defendant opened the door in his opening by indicating that this

was a virus that was responsible for all of this material." The district court again denied the motion. At the close of the government's case, the government moved a third time to admit evidence of the stories, asserting that "the stories . . . located on the two hard drives are relevant to show identity as well as lack of mistake or intent." This time, the district court found that Evans had opened the door to this evidence based on his cross-examination of the government's witnesses and ruled the stories admissible. We review this ruling for an abuse of discretion. Battle, 774 F.3d at 511.

The district court properly denied the government's motion to introduce the stories both before trial and at the start of the government's case in chief. At that point, the evidence was nothing more than propensity evidence, suggestive only of Evans's "predisposition and inherent tendency to commit the crimes charged." United States v. Johnson, 439 F.3d 884, 889 (8th Cir. 2006) (holding that two similar stories found in printed hard copy in the defendant's home were inadmissible propensity evidence). After Evans cross examined the government's witnesses, however, the district court determined he had opened the door to admission of this evidence by asserting that he did not know the images and videos of child pornography were on his media devices. See United States v. Bagola, — F.3d —, *5 (8th Cir. 2015) (explaining that the doctrine of "opening the door" allows a party to introduce otherwise inadmissible evidence to "clarify or rebut" an issue first raised by the opposing party). The court noted that "if you take a look at all the evidence, the stories and the images, what you find is that they're organized on various hard drives in quite a systematic fashion." Thus, the court concluded, the government could properly offer evidence of the stories to show "an absence of mistake," because these materials were "organized in a way that shows more than sort of a casual attention to these items."

We are not persuaded that Evans "opened the door" to the admission of this evidence. Evans's defense was that he had no knowledge of the images and videos of child pornography on his media devices and that a computer virus of some sort must be to blame. Evidence that the images and videos were highly organized on the media devices may counter this defense; as the district court noted, such organization suggests Evans gave more than "casual attention" to the materials. The fact that sexually explicit stories were among these highly organized materials, however, does not have similar evidentiary value. Introducing evidence that these stories were stored in the same systematic fashion on the media devices as the images and videos "does nothing to further the government's claim [that Evans] knew the [media devices] contained prohibited material." Johnson, 439 F.3d at 889. Thus, even after Evans asserted his lack of knowledge, evidence of the stories on Evans's hard drive remained merely propensity evidence that showed, if anything, Evans's predisposition to possess child pornography. To this extent, therefore, the stories were inadmissible. See Fed. R. Evid. 404(b).

However, it appears from the government's representation to the court at trial that some of the stories were located in a folder that also contained Evans's personal documents.[7] Unlike the stories located and organized with the images and videos,

_____

[7]In its original motion in limine, the government argued that "defendant saved the narratives onto some of the same devices in which he stored his child pornography. For instance, the bulk of the child pornography was found on two external hard drives . . . . These same hard drives also contained the bulk of the narratives involving the sexual abuse of children . . . ." Thus, the initial argument appears to have included the representation that the images and videos and the narrative stories were stored together. At trial, however, the government was more specific: "On one of the hard drives the stories are kept together with some of the defendant's personal documents separated from that child pornography. Now in some cases it is with child pornography but in other cases it's stored together with those

-8-

evidence of stories that were located with personal documents may be admissible to show absence of mistake or accident. This is because the location of the stories reflects on the truth of Evans's defense. As noted, the existence of stories located with the rest of the child pornography materials and organized in the same systematic fashion sheds no light on whether Evans knew about the images and videos. But, if the stories were located in the same folder as some of Evans's personal files, and if Evans accessed that folder, such evidence would tend to suggest Evans was aware of the stories on his media devices. And that would tend to refute his defense that he had no knowledge of any inappropriate materials that may have been downloaded onto his media devices by a computer virus. Yet the government did not make this distinction clear. In arguing for the non-propensity admission of the stories, the government did not articulate what type of personal documents the stories may have been stored with, or explain how their specific location refuted Evans's defense that he did not knowingly possess child pornography. Furthermore, although Evans testified, the government did not limit its cross examination questions[8] to address only

personal documents."

[8]The relevant testimony included the following exchange:

Q.   Mr. Evans, are you aware that there were stories detailing the sexual abuse between adult men and children found on two of your hard drives?
A.   No, Ms. Puhl, I was not.
Q.   You weren't aware of that?
A.   No, I was not.
Q.   You weren't aware that some of these stories, narratives, are found in an old "Documents" folder with other personal documents of yours?
A.   I have no idea, Ms. Puhl.
Q.   A story entitled "Floyd Liked the Young Ones" is found with

those stories that were located with personal documents such that the jury could understand the non-propensity purpose of this evidence at trial. The record therefore does not clearly reflect a legitimate, non-propensity purpose for admitting the stories into evidence.

Despite our concerns, we conclude that any error that did result from the admission of the stories was harmless. See United States v. Worman, 622 F.3d 969, 976 (8th Cir. 2010) ("An evidentiary ruling is harmless if the substantial rights of the defendant were unaffected, and the error had no, or only a slight, influence on the verdict."). The jury never heard the content of the stories, as the government's questioning was limited to the presence of the stories on Evans's media devices, the title of one of these stories, and the proximity of some of the stories to his personal

---

timesheet Robert Evans.

A.   I don't know anything about those files.

Q.   So it just happens that the same person who's putting child pornography on your hard drives changing those names and putting them on external hard drives is also putting stories detailing the sexual abuse of young kids on your hard drives as well?

A.   I would think that anybody that's capable of putting those things on my computer could have put anything on my computer, Ms. Puhl. I have no idea.

Q.   On hard drive 6B, Mr. Evans, those stories are labeled in a file folder entitled "Stories."

A.   I don't know, Ms. Puhl.

Q.   You didn't create that folder?

A.   Not that I remember ever creating that folder.

Similar follow-up questions were asked during brief redirect and recross examination of Evans.

documents. Furthermore, the government's reference to this evidence was brief, consisting of only eight questions, plus four asked by Evans's attorney on redirect. Finally, the stories were not mentioned during closing argument, which limited any possible effect on the jury's decision-making process.

There was also ample properly-admitted evidence that Evans knowingly possessed child pornography. The jury heard about his 56 media devices containing thousands of images and videos depicting child pornography. They also heard testimony that Evans allegedly altered the file names of child pornography images and videos after downloading them to make it look like the files depicted adult pornography instead. They knew that Evans lived alone in the apartment where the media devices were stored at the time of the search. Evans himself testified that he had earned degrees in business data processing and computer science and had significant experience with computers, including jobs as a computer programmer and manager of software projects. He also attempted to build computers for his own personal use. A reasonable jury could conclude that such a computer-savvy person would not fail to notice that a virus (or a person other than himself) had caused a download of such a large number of images and videos onto his media devices. Given the properly-admitted evidence at trial, we cannot say the brief discussion of these stories influenced the jury's verdict. Any error in admitting this line of questioning was therefore harmless. See Worman, 622 F.3d at 976.

## C. Restitution

The child pornography recovered from Evans's media devices included 20 videos and a handful of images of child pornography in the "Vicky" series. An attorney representing Vicky requested restitution from Evans for his role in victimizing Vicky. The parties agreed that Vicky's full restitution amount was

$1,346,158.12, but they disagreed about the amount Evans should be required to pay. See Paroline v. United States, 134 S. Ct. 1710, 1727 (2014) (stating "a court applying [18 U.S.C.] § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses"). Evans asserted that a restitution amount of $600 would be appropriate, while the government requested $5,000 on Vicky's behalf. The district court, considering factors set forth in Paroline,[9] determined that the appropriate amount was $3,250. On appeal, Evans argues that the district court abused its discretion and misapplied the test in Paroline in setting the restitution award for Vicky.

"An award of restitution is reviewed for abuse of discretion, and district court interpretations of the Mandatory Victims Restitution Act (MVRA) are reviewed de novo." United States v. Allison, 772 F.3d 554, 556 (8th Cir. 2014). The Supreme Court in Paroline stated that in determining the amount of restitution owed to a child pornography victim by a defendant, district courts may consider a number of factors, though they should not treat the inquiry as a purely mathematical or mechanical exercise. Paroline, 134 S. Ct. 1728. These factors are to be "rough guideposts for determining an amount that fits the offense." Id.

---

[9]Potentially relevant factors include: (1) "the number of past criminal defendants found to have contributed to the victim's general losses;" (2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;" (3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);" (4) "whether the defendant reproduced or distributed images of the victim;" (5) "whether the defendant had any connection to the initial production of the images;" (6) "how many images of the victim the defendant possessed;" and (7) "other facts relevant to the defendant's relative causal role." Paroline, 134 S. Ct. 1728.

The district court in this case considered the Paroline factors in arriving at the restitution award, including the harm experienced by Vicky, the range of awards granted in prior cases, the number of videos and images of Vicky possessed by Evans,[10] the number of people already convicted of possessing images of Vicky, the difficulty of assessing the number of future possessors of images of Vicky, and Evans's relative culpability. The district court applied appropriate law, considered appropriate factors, and set a restitution award it believed to be reasonable on the facts of this case. Given the ample discretion granted to district courts in setting restitution awards for victims of child pornography following Paroline, we cannot conclude that the district court abused that discretion in this case. See United States v. Beckmann, 786 F.3d 672, 683 (8th Cir. 2015).

### III. Conclusion

For the reasons above, we affirm the judgment of the district court.

_____

---

[10]Evans argues on appeal that the district court improperly set the restitution award based on the total number of images and videos found on all of his media files, rather than focusing on just the files in his possession depicting Vicky. We disagree with Evans's interpretation of the district court's reasoning. The only files discussed during the restitution proceeding were the videos and images of Vicky, and there is no indication the district court took into account the total number of files possessed by Evans when awarding restitution for Vicky.

-13-